Filed 8/18/14  Certified for Publication 9/8/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JADE FASHION & CO., INC., | B248432 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC479461) |
| v. | |
| HARKHAM INDUSTRIES, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dunn, Judge.  Affirmed.

Sussman Shank, John A. Schwimmer and Clifford S. Davidson; Law Offices of Gary Freedman and Gary Freedman for Defendants and Appellants.

Resch Polster & Berger, Robert W. Barnes and Sandra Khalili for Plaintiff and Respondent.

————————————————

Appellants Harkham Industries, Inc. and Uri Harkham (collectively "Harkham Industries") appeal from the trial court's grant of summary judgment in favor of respondent Jade Fashion & Co., Inc.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.      The Parties' Agreement

Jade Fashion is in the business of manufacturing and selling garments to other businesses.  Starting in Spring 2010, Jade Fashion and Harkham Industries entered into a series of purchase orders agreements under which Harkham Industries purchased certain garments from Jade Fashion at specified quantities and prices.  In 2011, Harkham Industries had cash flow problems and fell behind on its payment obligations to Jade Fashion.  As of November 28, 2011, Harkham Industries owed Jade Fashion the principal balance of $341,628.77 for the goods.

In November 2011, Sandra Khalili, counsel for Jade Fashion, and David Meniane, the Chief Financial Officer at Harkham Industries, had several communications about the outstanding debt that Harkham Industries owed to Jade Fashion.  According to Meniane, Khalili initially demanded that Harkham Industries pay off the entirety of the debt by the end of 2011.  After further negotiations, Khalili and Meniane agreed that Harkham Industries would have until February 2012 to repay the debt and would make weekly payments toward the satisfaction of the debt until the balance due was paid.  The amount of each weekly payment was determined by dividing the total debt by the number of weeks remaining before the February 2012 deadline for paying off the entirety of the debt.  Khalili and Meniane further agreed that, if Harkham Industries made all payments timely, it could take a discount of $17,500 from the total amount that was owed.  Following these communications, Jade Fashion and Harkham Industries entered into a written agreement on November 28, 2011 regarding the repayment of the debt (the "Agreement").

As set forth in the Agreement, Harkham Industries acknowledged that it owed Jade Fashion a total of $341,628.77 for the purchased goods.  Harkham Industries agreed

2

to pay "the weekly sum of $25,000 to Jade [Fashion] by wire transfer commencing on Friday, December 2, 2011 and on each Friday thereafter for a total amount of $341,628.88[1] until the entire balance due is paid in full." Uri Harkham, the Chief Executive Officer of Harkham Industries, agreed to execute a continuing guaranty for the repayment of the debt, including the principal balance, accrued interest, collection costs, and attorneys' fees. In exchange, Jade Fashion agreed to release the balance of the goods in Harkham Industries' then pending orders upon its receipt of the first two installment payments. Jade Fashion further agreed that if Harkham Industries "timely make[s] each installment payment when due, [it] may deduct $17,500 from the final installment due." The Agreement also included the following provision: "Time is of the essence with respect to each of the payments set forth herein and if [Harkham Industries] fails to make full and timely payment of any of the weekly payments, [Harkham Industries] will not be entitled to the discount of $17,500 and the remaining balance due by [Harkham Industries] shall be immediately due and payable."

The Continuing Guaranty that was concurrently signed by Uri Harkham similarly provided that Harkham Industries owed Jade Fashion the principal sum of $341,628.77, which was "currently due and payable." It further stated that Jade Fashion "agreed to forbear on the immediate collection of the Debt in full on the condition that [Harkham Industries] make installment payments of principal and interest pursuant to a scheduled approved by [the parties] concurrently herewith," and that Jade Fashion was "willing to agree to accept repayment of the Debt in accordance with the Payment Plan provided that [Uri Harkham] personally guaranties the repayment of the Debt." The guaranty extended to "all principal, interest, late charges, fees, remedial advance reimbursements, future advances, costs of collection and attorneys' fees" related to the debt.

---

[1] The Agreement incorrectly stated that the total amount of the outstanding debt was $341,628.88 rather than $341,628.77 (a difference of 11 cents). It is undisputed that the original principal balance owed by Harkham Industries to Jade Fashion was $341,628.77, which was the amount used to calculate the judgment entered by the trial court.

Under the Agreement, the weekly installment payments were due on December 2, 9, 16, 23, and 30, 2011, on January 6, 13, 20, and 27, 2012, and on February 3, 10, 17, and 24, 2012. Harkham Industries timely made its first two installment payments on December 2 and 9, 2011, respectively. Jade Fashion in turn released all of the remaining goods in Harkham Industries' purchase orders in accordance with the Agreement. Following its receipt of the goods, however, Harkham Industries ceased making all of the weekly installment payments when they were due. Of the 13 scheduled payments, Harkham Industries did not fully and timely pay the installments that were due on December 16 and 23, 2011, on January 20 and 27, 2012, and on February 3, 2012. Each of these five installments was paid in full, but from three to 12 days late.[2]

On February 10, 2012, two weeks before the final installment was due, Harkham Industries made three payments to Jade Fashion—a wire transfer of $25,000, a check for $30,000, and a check for $39,128.77. The wire transfer of $25,000 and the check for $30,000 reflected a part of the principal balance that was owed for the goods. The check for $39,128.77 reflected the remaining principal balance less the $17,500 discount, which Harkham Industries contended was the final payment due. Jade Fashion accepted the $25,000 wire transfer and the $30,000 check. It refused to cash the $39,128.77 check, asserting that Harkham Industries' failure to timely make all of the weekly installment payments precluded it from applying the $17,500 discount to its final payment.

On February 15, 2012, Khalili sent Harkham Industries a letter in which she demanded payment of the principal balance of $17,500, plus interest and attorney's fees incurred in collection of the debt. She also indicated that the $39,128.77 check could be

---

[2]     The five late payments were made follows: (1) the installment due on December 16, 2011 was paid on December 19, 2011; (2) the installment due on December 23, 2011 was paid on December 29, 2011; (3) the installment due on January 20, 2012 was paid in part on that date and in full on January 24, 2012; (4) the installment due on January 27, 2012 was paid in part on February 1 and 3, 2012 and in full on February 8, 2012; and (5) the installment due on February 3, 2012 was paid in part on February 8, 2012 and in full on February 10, 2012.

4

credited to Harkham Industries' account if the balance due was paid.  Harkham Industries refused to make the requested payment.

## II.    Jade Fashion's Lawsuit Against Harkham Industries

On February 23, 2012, Jade Fashion filed a civil action against Harkham Industries asserting causes of action for breach of contract, goods sold and delivered, open book account, account stated, and breach of guaranty.  The complaint alleged that Harkham Industries breached the parties' written agreement by failing to comply with the payment terms set forth in the agreement, including refusing to pay the remaining principal balance of $17,500 for the goods it had purchased from Jade Fashion.  The complaint sought damages in the amount of $56,628.77 (the sum of the $17,500 discount and the $39,128.77 uncashed check), plus interest and attorneys' fees.

On March 2, 2012, based on erroneous information provided by Jade Fashion's bank, Khalili sent a letter to counsel for Harkham Industries in which she represented that the $30,000 check issued on February 10, 2012 had been returned due to unavailable funds, and demanded that the unpaid amount be wired to Jade Fashion by the following business day.  After making that payment and then confirming that the original check had in fact been paid, Harkham Industries filed a cross-complaint against Jade Fashion and its counsel for fraud, conversion, and unjust enrichment.  The trial court granted the special motion to strike brought by Jade Fashion and its counsel pursuant to Code of Civil Procedure section 425.16 and dismissed each cause of action in the cross-complaint.[3]

## III.   Jade Fashion's Motion for Summary Judgment

On September 21, 2012, Jade Fashion filed a motion for summary judgment.  Jade Fashion argued that it was entitled to judgment as a matter of law on each of its claims because the undisputed facts established that Harkham Industries breached the parties'

---

[3]    On August 26, 2013, in a nonpublished opinion, this Court affirmed the trial court's order granting the special motion to strike the cross-complaint.  (See *Harkham Industries, Inc. v. Jade Fashion & Co., Inc.* (Aug. 26, 2013, B242972) [nonpub. opn.].)

written agreement by failing to pay the principal balance owed for the goods that Jade Fashion sold and delivered to Harkham Industries. The motion was supported by various exhibits and declarations from Khalili and Ricky Lee, the Jade Fashion employee who was responsible for Harkham Industries' purchase orders.

On November 19, 2012, Harkham Industries filed a motion to compel the deposition of Khalili. Harkham Industries contended that Khalili was an agent of Jade Fashion and a percipient witness in the case because she was Jade Fashion's sole negotiator of the Agreement and had personal knowledge of Harkham Industries' payment history. Two days later, on November 21, 2012, Harkham Industries filed its opposition to the summary judgment motion. Harkham Industries argued that there were triable issues of material fact as to whether it substantially performed under the terms of the Agreement, whether the $17,500 discount provision was an unenforceable penalty or forfeiture, and whether Jade Fashion's wrongful procurement and retention of the additional $30,000 payment gave rise to an unclean hands affirmative defense. Harkham Industries also argued that the summary judgment motion should be denied or continued under Code of Civil Procedure section 437c, subdivision (h) based on Khalili's refusal to appear and produce documents at her noticed deposition.

The trial court continued the hearing on Jade Fashion's summary judgment motion to December 13, 2012, the date set for Harkham Industries' motion to compel. At that hearing, the trial court denied the motion to compel and granted the motion for summary judgment.[4] With respect to the motion to compel and related request for a continuance, the trial court found that Harkham Industries had not submitted a declaration showing good cause, and had not otherwise demonstrated how Khalili's deposition might lead to facts relevant to its opposition. With respect to the summary judgment motion, the trial court found that the parties' written agreement unambiguously provided that Harkham Industries would receive a $17,500 discount only if it timely paid all of the weekly

---

[4]     In granting summary judgment, the court also sustained 26 of Jade Fashion's 36 evidentiary objections.

6

installments, and that Harkham Industries failed to comply with these material terms by making some of its payments late. The court also found that the $17,500 at issue was part of the original $341,628.77 debt that Harkham Industries owed to Jade Fashion, and as such, it was not an unlawful penalty or forfeiture.

On March 15, 2013, the trial court entered a judgment in favor of Jade Fashion and awarded Jade Fashion the principal sum of $26,628.77 and interest of $6,936.28. On April 30, 2013, Harkham Industries filed a notice of appeal. On June 27, 2013, in a post-judgment proceeding, the trial court awarded Jade Fashion $70,000 in attorneys' fees.

## DISCUSSION

### I. Standard Of Review

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 850.) The party opposing summary judgment "may not rely upon the mere allegations or denials of its pleadings," but rather "shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.*, *supra*, at p. 850.)

Where summary judgment has been granted, we review the trial court's ruling de novo. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 860.) We consider all the evidence presented by the parties in connection with the motion (except that which was properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) We affirm summary

7

judgment where it is shown that no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  The decision whether to grant a continuance under Code of Civil Procedure section 437c, subdivision (h), is reviewed for an abuse of discretion.  (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100; *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633.)

## II.    Inadequate Appellate Record

As a preliminary matter, we address Jade Fashion's argument that the trial court's judgment must be affirmed because Harkham Industries failed to present an adequate record on appeal.  The California Rules of Court require an appellant who elects to proceed by appendix to include, among other things, any document filed in the trial court which "is necessary for proper consideration of the issues, including . . . any item that the appellant should reasonably assume the respondent will rely on."  (Cal. Rules of Court, rule 8.124(b)(1)(B).)  It is also a fundamental rule of appellate review is that an appealed judgment or order is presumed correct.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . . [Citations.]'" (*Ibid.*)  To overcome this presumption, the appellant must provide an adequate appellate record demonstrating error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)  "'A necessary corollary to this rule [is] that a record is inadequate . . . if the appellant predicates error only on the part of the record he [or she] provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed.' [Citation.]" (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435.)  Where the appellant fails to provide an adequate record of the challenged proceedings, we must presume that the appealed judgment or order is correct, and on that basis, affirm. (*Maria P. v. Riles*, *supra*, at pp. 1295-1296; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1.)

In its appeal, Harkham Industries submitted an appendix which included all of the documents that it filed in support of its motion to compel the deposition of Khalili, and in

opposition to Jade Fashion's motion for summary judgment. The appendix also included the complaint, Jade Fashion's opening and reply memoranda in support of its summary judgment motion, the trial court's order granting the summary judgment motion, and the judgment. On the other hand, the appendix omitted Jade Fashion's opposition to the motion to compel, all of its evidence in support of the summary judgment motion, its requests for judicial notice, its separate statement of undisputed material facts, its response to Harkham Industries' separate statement of opposing material facts, and its objections to Harkham Industries' opposing evidence. The appendix also omitted the trial court's rulings on Jade Fashion's evidentiary objections.

In its reply brief, Harkham Industries concedes that certain documents necessary for appellate review of the judgment were omitted from its appendix, but contends that such error was inadvertent. Given that Harkham Industries included all of the papers that it filed in opposition to the summary judgment motion, and excluded almost all of the papers filed by Jade Fashion, its claim of inadvertent error is suspect. However, because Jade Fashion filed a respondent's appendix that included all of the improperly omitted documents, we review the trial court's summary judgment ruling on the merits.

## III.    Breach of Contract Claims

To establish a cause of action for breach of contract, the plaintiff must plead and prove (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; *Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1244.)

The undisputed evidence demonstrates that Jade Fashion and Harkham Industries entered into a written contract under which Harkham Industries agreed to pay Jade Fashion a weekly installment of $25,000 until the balance of $341,628.77 was paid in full, and in exchange, Jade Fashion agreed to deliver all of the remaining goods purchased by Harkham Industries. In addition, Jade Fashion agreed to discount the final payment by $17,500 if Harkham Industries fully and timely paid each weekly installment.

9

It is also undisputed that Jade Fashion fully performed its obligations under the Agreement by delivering all of the purchased goods, and that Harkham Industries failed to make each weekly installment payment when due. The undisputed facts further show that, despite paying some of the weekly installments late, Harkham Industries deducted $17,500 from its final payment. As a result, Harkham Industries paid Jade Fashion a total of $324,128.77 for the delivered goods rather than the agreed balance of $341,628.77.

Given these undisputed facts, Jade Fashion met its initial burden on summary judgment by demonstrating that it was entitled to judgment as a matter of law on its breach of contract claims. The burden therefore shifted to Harkham Industries to establish the existence of a triable issue. On appeal, Harkham Industries argues that it satisfied its burden because there were triable issues of material fact as to (1) whether the provision for a $17,500 discount contingent upon timely installment payments constituted an unenforceable penalty or forfeiture, (2) whether the provision that "time was of the essence" with respect to each installment payment was impermissibly ambiguous, and (3) whether Jade Fashion's procurement and retention of the additional $30,000 sum paid by Harkham Industries supported an unclean hands affirmative defense. We conclude that the trial court properly granted summary judgment on the breach of contract claims.

## A.    Unenforceable Penalty or Forfeiture

Harkham Industries first contends that the trial court erred in failing to conclude that, as a matter of law, the provision in the Agreement concerning the $17,500 discount was an unenforceable penalty or forfeiture. Under Civil Code section 1671, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (Civ. Code, § 1671, subd. (b).) The California Supreme Court has held that a "liquidated damages clause will generally be considered unreasonable, and hence unenforceable under [Civil Code] section 1671 [subdivision] (b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." (*Ridgley v.*

10

*Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 (*Ridgley*).) "The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' [Citation.] In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.'" (*Ibid*.) "Whether an amount to be paid upon breach is to be treated as liquidated damages or as an unenforceable penalty is a question of law." (*Harbor Island Holdings v. Kim* (2003) 107 Cal.App.4th 790, 794 (*Harbor Island*).)

In support of its argument that the $17,500 discount provision was an unlawful penalty, Harkham Industries primarily relies on three Court of Appeal decisions—*Sybron Corp. v. Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896 (*Sybron*), *Greentree Financial Group. Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495 (*Greentree*), and *Purcell v. Schweitzer* (2014) 224 Cal.App.4th 969 (*Purcell*).

In *Sybron*, a seller of goods sued the buyers for approximately $144,000 and the buyers cross-complained for approximately $160,000 on grounds of defective goods and rescission. The parties reached a settlement under which the buyers would pay the seller $72,000 plus interest in 12 monthly installments; if the buyers defaulted on any payment, a stipulated judgment for $100,000 could be entered in the seller's favor. After paying $42,000, the buyers became delinquent and the seller obtained a stipulated judgment of $100,000. (*Sybron*, *supra*, 76 Cal.App.3d at pp. 898-899.) The Court of Appeal held that the stipulated judgment was an unenforceable penalty and forfeiture because it bore "no reasonable relationship to actual damages suffered by [the seller] as the result of delay but to the contrary appears grossly disproportionate in amount." (*Id*. at p. 903.) As the court explained, a "creditor is entitled to bargain that if the installment debtor imposes upon the creditor by a continuing course of dilatory payment the creditor may accelerate and collect the entire obligation, plus a reasonable amount to compensate for delay. On the other hand, the equitable powers of the court exist to insure that the ultimate obligation imposed on the debtor is not unreasonable *in proportion* to the original obligation and the seriousness of the default." (*Ibid*.) The court reasoned that enforcement of the default provision "would result in a $28,000 penalty for delay in

11

payment of $30,000, a penalty which bears no rational relationship to the amount of actual damages suffered." (*Ibid.*)

In *Greentree*, the plaintiff sued the defendant for failing to pay $45,000 due under a financial services contract. In its answer, the defendant asserted affirmative defenses for failure to mitigate and prior material breach by the plaintiff. The parties entered into a settlement agreement which provided the defendant would pay the plaintiff $20,000 in two installments; if the defendant defaulted on either payment, the plaintiff would be entitled to a judgment for the entire amount sought in its complaint. After the defendant defaulted on the first payment, the plaintiff obtained a judgment for $61,000, consisting of $45,000 in damages plus interest and attorneys' fees. (*Greentree*, *supra*, 163 Cal.App.4th at p. 498.) The Court of Appeal held that the judgment was an unlawful penalty because it bore "no reasonable relationship to the range of actual damages the parties could have anticipated would flow from a breach of their settlement agreement." (*Id.* at p. 497.) The court noted that the relevant breach to be analyzed "is the breach of the *stipulation*, not the breach of the *underlying contract*." (*Id.* at p. 499.) It then reasoned that the parties "did not attempt to anticipate the damages that might flow from a breach of the stipulation. Rather, they simply selected the amount [the plaintiff] had claimed as damages in the underlying lawsuit, plus prejudgment interest, attorney fees, and costs. But the appellate record contains nothing showing [the plaintiff's] chances of complete success on the merits of its case – the record contains only the complaint, the answer, and the stipulation. In the stipulation, '[e]ach party disclaims any admission of wrongdoing, fault, liability, or violation of law.'" (*Id.* at pp. 499-500.) The court observed that "the judgment would have been enforceable if it had been designed to encourage [the defendant] to make its settlement payments on time, and to compensate [the plaintiff] for its loss of use of the money plus its reasonable costs in pursuing the payment." (*Id.* at p. 500.) However, "the amount of the judgment, which awarded . . . approximately $40,000 more than the settlement amount, does not merely compensate [the plaintiff] – it rewards [the plaintiff] by penalizing [the defendant]." (*Ibid.*)

12

In *Purcell*, the defendant borrower defaulted on a $85,000 loan given by the plaintiff lender. After the lender sued to recover on the loan, the parties entered into a settlement under which the borrower would pay the lender $38,000 plus interest in monthly installments; if any payment was late, the entire original liability of $85,000 would be due. (*Purcell*, *supra*, 224 Cal.App.4th at p. 971.) The agreement further provided that the $85,000 was "an agreed upon amount of monies actually owed . . . by the [borrower] to the [lender] and is neither a penalty nor is it a forfeiture," and that it took into account "the economics associated with proceeding further with this matter," including attorneys' fees and costs of litigation. (*Id*. at p. 972.) When the borrower made one $750 payment six days late, the lender immediately sought and obtained a judgment for almost $60,000. (*Id*. at p. 973.) Relying on *Greentree*, the Court of Appeal held that the judgment was an unenforceable penalty because it "bore no reasonable relationship to the damages that it could be expected that [the lender] would suffer as a result of a breach by [the borrower]." (*Id*. at pp. 975-976.) In response to the lender's argument that the parties had agreed the $85,000 amount reflected the economics of proceeding with the lawsuit, the court stated: "That provision in the settlement agreement bore no reasonable relationship to damages [the lender] would be expected to actually suffer as a result of a breach, such as the late payment that occurred in this case. There is nothing in the record to support the fact that obtaining a judgment and instituting postjudgment procedures would cost $85,000. . . . [¶] The language in the stipulation seeking to tie the $85,000 to the economics of proceeding further with the matter was an obvious attempt to circumvent the public policy expressed in [Civil Code section 1671]. However, . . . that public policy may not be circumvented by words used in a contract." (*Id*. at p. 976.)

Harkham Industries argues that, like the default provisions in *Sybron*, *Greentree*, and *Purcell*, the $17,500 discount was an impermissible penalty because it bore no reasonable relationship to the damages that Jade Fashion actually suffered as a result of the late payments. Harkham Industries claims that the actual damages suffered consisted of the net interest on the late payments, which according to its calculation, was less than $27. However, in each of the above-cited cases, the parties agreed to settle a pending

13

lawsuit for a stipulated amount that was less than the damages alleged in the plaintiff's complaint; if the defendant breached the settlement agreement, it then would be required to pay a fixed amount of additional damages, which was disproportionately higher than the settlement amount. In contrast, the agreement between Jade Fashion and Harkham Industries was not an agreement to settle or compromise a disputed claim. Rather, it was an agreement to forbear on the collection of a debt that was admittedly owed for goods that had been delivered so long as timely installment payments were made.

The parties expressly agreed that Harkham Industries owed Jade Fashion the balance of $341,628.77 for the goods it had purchased, and that it would make weekly installment payments of $25,000 "for a total amount of $341.628.[77] until the entire balance [was] paid in full." The Agreement also specified that, if Harkham Industries "timely makes each installment payment when due, [it] may deduct $17,500 from the final installment due"; however, if it "fails to make full and timely payment of any of the weekly payments, [it] will not be entitled to the discount." The Continuing Guaranty signed by Uri Harkham likewise provided that Harkham Industries owed Jade Fashion the sum of $341,628.77, which was "currently due and payable," and that Jade Fashion "agreed to forebear on the immediate collection of the Debt in full on the condition that [Harkham Industries] make installment payments of principal and interest" pursuant to the agreed upon schedule.

The express language of the Agreement accordingly establishes that the $17,500 discount was not liquidated damages for a breach of contract, nor was it an additional payment over and above any debt that was owed. Instead, the $17,500 was part of the $341,628.77 debt which Harkham Industries specifically admitted it owed to Jade Fashion in both the Agreement and the Continuing Guaranty. Under these circumstances, Civil Code section 1671's restriction on liquidated damages clauses does not apply, and the enforceability of the $17,500 discount provision does not depend on whether it bore a reasonable relationship to the actual damages suffered from the late payments. Because Harkham Industries expressly agreed to pay the entire balance of $341,628.77 and to take the $17,500 discount only if it paid each weekly installment when due, Jade Fashion

14

suffered actual damages of $17,500 when Harkham Industries failed to timely make its payments and then refused to pay the entirety of the debt owed.

Harkham Industries nevertheless asserts that, under *Greentree* and *Purcell*, "the original debt [it] allegedly owed is irrelevant to determining the damages that flow from breach of the Agreement." As support, Harkham Industries notes that both cases provide that the relevant breach to be analyzed for purposes of Civil Code section 1671 is "the breach of the *stipulation*, not the breach of the *underlying contract*." (*Greentree*, *supra*, 163 Cal.App.4th at p. 499; *Purcell*, *supra*, 224 Cal.App.4th at p. 975.) However, unlike the stipulations at issue in *Greentree* and *Purcell*, the plain language of the Agreement and the Continuing Guaranty make clear that the parties did not enter into an agreement to compromise the original debt for a lesser amount subject to a penalty for late payment. Instead, the parties specifically agreed that Harkham Industries continued to owe Jade Fashion the original balance of $341,628.77 for the purchased goods, and that Harkham Industries would make weekly installment payments of $25,000 "for a total amount of $341,628.[77] until the entire balance due is paid in full." The $17,500 discount would not be available until the final installment payment, and would not apply unless all prior installment payments had been fully and timely made.

Harkham Industries argues that, while the $17,500 amount was framed as a discount, it was simply a penalty by another name. Citing *Harbor Island*, Harkham Industries reasons that a party may not avoid application of Civil Code section 1671 by re-characterizing a penalty as a bargained-for discount. In *Harbor Island*, a landlord and its tenants entered into a commercial lease extension under which the tenants agreed to pay an increased monthly rent of $96,365, which was more than triple the amount of the original rent. Under the extension, half of the new monthly rent would be conditionally deferred and ultimately forgiven if the tenants complied with all of their lease obligations. When the tenants breached the lease by failing to properly maintain the premises, the landlord sued to recover $14,000 in damages for that breach, plus $240,000 in deferred rent. (*Harbor Island*, *supra*, 107 Cal.App.4th at p. 793.) In holding that the deferred rent provision was an unlawful penalty, the Court of Appeal rejected the landlord's argument

15

that its actual loss was the amount of rent that was conditionally deferred in anticipation of perfect performance. As the court explained: "A forfeiture or unreasonable penalty, imposed only upon the other party's default, is unenforceable even though the same money, property or other consideration might have validly been bargained for as a form of contractual performance. A contrary conclusion would allow unreasonable late charges and other penalties to escape legal scrutiny through simple rephrasing as a conditional waiver." (*Id*. at pp. 798-799, quoting *Ridgley*, *supra*, 17 Cal.4th at p. 982.)

Harkham Industries' reliance on *Harbor Island* is misplaced. By its terms, the Agreement did not purport to increase the amount of the original debt owed by Harkham Industries if any future payments were late. As discussed, the $17,500 amount was part of the existing $341,628.77 debt, which Harkham Industries admitted was due and owing, and which it agreed to repay in accordance with a specified payment schedule. While we agree that parties to a contract may not circumvent the public policies embodied in Civil Code section 1671 merely by labeling a penalty a discount, the plain language of the Agreement does not support a finding that Jade Fashion intended to penalize Harkham Industries by agreeing to forbear on collection of a debt that was indisputably due and owing so long as timely payments on the original debt amount were made.

We also reject Harkham Industries' contention that the trial court erred in failing to consider whether it was entitled to relief because the $17,500 discount constituted an unlawful forfeiture. Civil Code section 3275 provides that "[w]henever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." Harkham Industries' forfeiture claim is similarly premised on the theory that the parties effectively settled their dispute for $324,128.77 when they entered into the Agreement and that Harkham Industries met its overall obligation by paying that sum two weeks early. This theory, however, is inconsistent with the express language of the Agreement: Harkham Industries specifically acknowledged that it owed Jade Fashion the balance of $341,628.77 for the purchased goods and agreed to pay the

16

entire balance due in weekly installment payments. Therefore, contrary to Harkham Industries' claim, the actual damages suffered by Jade Fashion were not limited to interest on the late payments. The actual damages also included the $17,500 portion of the debt that Harkham Industries owed but refused to pay.

As the Supreme Court described in *Ridgley*, "[t]he characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. [Citations.]" (*Ridgley*, *supra*, 17 Cal.4th at p. 977.) The contract at issue here expressly obligated Harkham Industries to pay off the entirety of the original debt in weekly installments payments and entitled it to a discount from its final payment only if each installment was timely paid. Because Harkham Industries failed to fully perform under the Agreement by paying five installments late, it remained liable to Jade Fashion for the full amount of its $341,628.77 debt. As a matter of law, the $17,500 discount provision was not an unenforceable penalty or forfeiture.

## B.    Alleged Ambiguity in the Agreement

Harkham Industries also argues that the trial court should have denied summary judgment on the breach of contract claims because the provision in the Agreement that "time was of the essence" with respect to each installment payment was impermissibly ambiguous. Harkham Industries specifically asserts that the trial court erred in failing to provisionally consider extrinsic evidence of the parties' oral communications, and if such evidence had been considered, the trial court would have found that the Agreement was ambiguous and that triable issues of fact existed as to its proper interpretation.

"The rules governing the role of the court in interpreting a written instrument are well established. The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the trial court 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms. [Citations]. [¶] The court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or

17

contradict the clear and unambiguous terms of a written, integrated contract. [Citations.] Extrinsic evidence is admissible, however, to interpret an agreement when a material term is ambiguous. [Citations.] [¶] "When the meaning of the words used in a contract is disputed, the trial court engages in a three-step process. First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.] If, in light of the extrinsic evidence, the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract. [Citations.] When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citations.] This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence [citations] or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. [Citations.] If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury. [Citations.] (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125-1126, fn. omitted.)

Paragraph 5 of the Agreement provided as follows: "Time is of the essence with respect to each of the payments set forth herein and if [Harkham Industries] fails to make full and timely payment of any of the weekly payments, [Harkham Industries] will not be entitled to the discount of $17,500 and the remaining balance due by [Harkham Industries] shall be immediately due and payable. Jade [Fashion] shall be entitled to exercise all of its rights and remedies against [Harkham Industries] and Uri Harkham, as guarantor." On its face, this provision in the Agreement is unambiguous. It clearly and explicitly stated that Harkham Industries would not be entitled to the $17,500 discount if it failed to fully and timely pay each installment when due. Consistent with this provision, Paragraph 4 of the Agreement stated that if Harkham Industries and Uri Harkham "timely make *each installment payment when due*, they may deduct $17,500 from the final installment due." There is nothing in the plain language of the Agreement which would indicate that the parties intended for the discount to apply even if Harkham Industries failed to pay each weekly installment when due.

18

In support of its argument that the "time is of the essence" provision is susceptible to more than one interpretation, Harkham Industries relies on the statements in David Meniane's declaration regarding his oral communications with Khalili. According to Meniane, Khalili initially insisted that Harkham Industries pay off the entirety of the debt by the end of 2011, but eventually agreed that it could have until February 2012 to pay off the debt. Khalili and Meniane also agreed that Harkham Industries would make weekly payments toward satisfaction of the debt, and could take a discount of $17,500 if it timely paid off the debt. After setting the February 2012 deadline, Khalili and Meniane calculated the amount of each weekly payment by dividing the total debt to be paid by the number of weeks remaining before the deadline for paying off the debt.

These statements in Meniane's declaration about the parties' oral communications merely reflect that they agreed the debt would be repaid in weekly installments, and that if the debt was timely repaid, Harkham Industries would receive a $17,500 discount. However, nothing in the declaration indicates that Harkham Industries was not required to make its installment payments on time under the terms of the parties' agreement. Moreover, contrary to Harkham Industries' characterization, the record reflects that the trial court did provisionally receive into evidence these portions of Meniane's declaration, and ultimately found that the "time is of the essence" provision was not ambiguous or susceptible to the interpretation urged by Harkham Industries. As the trial court correctly concluded, the language of the Agreement "is clear, and its plain terms control."

Harkham Industries also contends that the parties' course of performance shows that time was *not* of the essence with respect to each weekly installment payment because Jade Fashion never insisted on the accelerated amount despite the lateness of some payments. This claim is not supported by the record. In its summary judgment motion, Jade Fashion submitted multiple emails and letters from Khalili to Harkham Industries in which she explicitly stated that, because Harkham Industries had failed to timely make its installment payments, the entire balance of the debt was immediately due. In each correspondence, Khalili also expressly reserved all of Jade Fashion's rights and remedies

19

under the Agreement.  In opposing the summary judgment motion, Harkham Industries did not dispute that Jade Fashion sought to invoke the default provision in the Agreement when Harkham Industries became delinquent in its payments.  To the contrary, Harkham Industries' submitted evidence included a December 16, 2011 email from Khalili to Meniane in which she asserted that Harkham Industries had defaulted under the Agreement by failing to timely pay its third installment, and that as a result, the "entire unpaid balance of the debt owed. . . is immediately due and payable."  Based on the undisputed evidence, Harkham Industries has failed to demonstrate the existence of a triable issue of material fact as to the proper interpretation of the Agreement.

### C. Unclean Hands Defense

Harkham Industries further asserts that the trial court erred in failing to consider whether Jade Fashion's alleged fraudulent inducement of a $30,000 overpayment raised triable issues of fact as to the affirmative defense of unclean hands.  The doctrine of unclean hands is a defense available in both legal and equitable actions.  "'Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries.' [Citation.]" (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110.)  "The focus is the equities of the relationship between the parties, and specifically whether the unclean hands affected the transaction at issue. [Citations.]"  (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 820.)  "Not every wrongful act constitutes unclean hands." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979.)  "The misconduct that brings the unclean hands doctrine into play must relate directly to the cause at issue.  Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice. . . . The misconduct must ""'prejudicially affect . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.'"  [Citation.]"  (*Ibid*.; see also *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 282 ["the improper conduct must be 'in the particular transaction or connected with the subject matter of the litigation that is a defense'"].)

Harkham Industries' unclean hands defense is based on the alleged fraudulent statements made in the March 2, 2012 letter that Khalili sent to Harkham Industries' attorney during the course of the litigation. In that letter, Khalili stated that, based on information provided by Jade Fashion's bank, the $30,000 check issued by Harkham Industries on February 10, 2012 had been returned unpaid due to unavailable funds. She also demanded payment of that amount by the following business day. When it was later confirmed by the parties that the check had in fact been paid, Jade Fashion refused to return the additional $30,000 payment that had been made by Harkham Industries.

In opposing summary judgment, Harkham Industries did not offer any evidence that either Jade Fashion or Khalili acted with an intent to defraud in connection with the letter. However, even if we assume that Khalili intentionally misrepresented the status of the $30,000 check in her letter, such conduct does not support an unclean hands defense as a matter of law. Harkham Industries cannot show how the alleged misconduct prejudicially affected its rights in the litigation because it is undisputed that Jade Fashion agreed to credit the $30,000 overpayment to the balance owed by Harkham Industries under the Agreement. Accordingly, while Jade Fashion initially sought to recover the principal balance of $56,628.77 (the sum of the $17,500 discount and the $39,128.77 uncashed check) in its complaint, it reduced the principal balance portion of the demand to $26,628.77 following Harkham Industries' payment of the additional $30,000 sum. The trial court properly applied this credit in entering judgment in Jade Fashion's favor, and thus, awarded Jade Fashion the principal amount of $26,628.77 as damages for Harkham Industries' breach. Because Jade Fashion's procurement and retention of the $30,000 overpayment did not result in any prejudice to Harkham Industries, the unclean hands defense did not apply. Jade Fashion was entitled to judgment as a matter of law on its breach of contract claims.

## IV. Common Count Claims

Harkham Industries also challenges the trial court's grant of summary judgment in favor of Jade Fashion on the common count claims for goods sold and delivered, open

21

book account, and account stated. Harkham Industries contends that the common counts fail as a matter of law because the Agreement constituted a novation that extinguished the prior debt and expressly governed the transaction between the parties. At the summary judgment hearing, the trial court noted that it had "some problem . . . with the common counts," but stated that "[a]s a practical matter, it doesn't really matter if I grant summary adjudication on some and not others."

It is the appellant's burden to demonstrate the existence of prejudicial error. (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443.) As Jade Fashion correctly points out, its three common count claims were pled as alternatives to its breach of contract claims. For each cause of action alleged, Jade Fashion sought to recover, and the trial court ultimately awarded, the same damages – the unpaid principal due under the Agreement plus accrued interest. Therefore, even assuming the trial court erred in granting summary judgment on the common count claims, Harkham Industries cannot show prejudice because Jade Fashion was entitled to judgment as a matter of law on the breach of contract claims and no additional damages were awarded on the common count claims. On this record, Harkham Industries has failed to demonstrate any error requiring reversal. (Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside … for any error as to any matter of procedure, unless … the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 81 ["[a] ruling that resulted in no discernible prejudice cannot . . . be characterized as a miscarriage of justice"].)

## V.     Denial of Request for a Continuance

Harkham Industries further claims that the trial court erred in failing to continue or deny the summary judgment motion to permit it to depose Khalili in her capacity as an agent for Jade Fashion. We conclude that the trial court acted within its discretion in denying the request for a continuance because Harkham Industries failed to show how facts essential to its opposition could be obtained by deposing Jade Fashion's attorney.

22

Section 437c of the Code of Civil Procedure directs a trial court to deny a motion for summary judgment, or to continue the hearing, upon a good faith showing that an extension of time is needed to obtain facts essential to justify opposition to the motion. (Code Civ. Proc., § 437c, subd. (h) ["[i]f it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had"].)  To demonstrate good faith, the party seeking a continuance must submit an affidavit or declaration showing that "'(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts.'"  (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254.)  "'The purpose of the affidavit required by . . . [Code of Civil Procedure] section 437c, subdivision (h) is to inform the court of outstanding discovery which is necessary to resist the summary judgment motion.  [Citations.]'"  (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 397.)  "It is not sufficient under the statute merely to indicate further discovery or investigation is contemplated.  The statute makes it a condition that the party moving for a continuance show 'facts essential to justify opposition may exist.'"  (*Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 548.)

It is undisputed that Khalili refused to appear for deposition on the grounds of the attorney-client privilege.  Harkham Industries asserts that Khalili's deposition was necessary because she was Jade Fashion's sole negotiator of the Agreement and one of two individuals who submitted a declaration in support of its summary judgment motion.  This showing is not sufficient, however, to constitute good cause for a continuance.  First, the mere fact that Khalili submitted a declaration for the summary judgment motion does not establish that she possessed facts essential to Harkham Industries' opposition.  As the trial court observed, the majority of Khalili's supporting declaration merely authenticated the parties' written correspondence and discovery responses, none of which was disputed by Harkham Industries.  Second, the declarations that Harkham Industries submitted with its opposition failed to show what specific facts it believed could be obtained by deposing

23

Khalili. The declaration from Harkham Industries' attorney, John Schwimmer, primarily recounted his efforts to meet and confer with Khalili about her refusal to be deposed, but did not articulate why her deposition was essential to opposing summary judgment in the first place. The declaration from David Meniane, Harkham Industries' negotiator of the Agreement, described his oral communications with Khalili about how the debt would be repaid; however, as discussed, the trial court admitted this evidence in ruling on the summary judgment motion and correctly concluded that it failed to raise a triable issue as to the proper interpretation of the Agreement. Neither declaration explained what additional information could be obtained from Khalili about the terms of the Agreement or how that information was essential to justify Harkham Industries' opposition.

Harkham Industries also argues that Khalili's deposition was necessary to support its unclean hands affirmative defense because, as the author of the March 2, 2012 letter, Khalili was a percipient witness to Jade Fashion's alleged fraudulent inducement of the additional $30,000 payment. This claim likewise fails. As previously discussed, Harkham Industries cannot establish the elements of the unclean hands defense because it cannot show how the alleged misconduct prejudicially affected its rights in the litigation. Even if we assume that Khalili acted with an improper motive in sending the letter, it is undisputed that Jade Fashion agreed to credit the $30,000 overpayment to the balance due under the Agreement, and that the trial court applied that credit in awarding damages to Jade Fashion for Harkham Industries' breach. Under these circumstances, Harkham Industries has failed to demonstrate how a continuance to depose Khalili could have led to the discovery of facts essential to its summary judgment opposition. The trial court accordingly did not abuse its discretion in denying the request for a continuance.

24

## DISPOSITION

The judgment is affirmed.  Jade Fashion shall recover its costs on appeal.


ZELON, J.


We concur:



WOODS, Acting P. J.



SEGAL, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 9/8/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JADE FASHION & CO., INC., | B248432 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC479461) |
| v. | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| HARKHAM INDUSTRIES, INC. et al., | |
| Defendants and Appellants. | |

THE COURT:

The opinion in this case filed August 18, 2014 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the non-party's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

WOODS, Acting P. J.,                    ZELON, J.,                    SEGAL, J. (Assigned)