Filed 7/14/15  Mitchell v. Delphinus Engineering, Inc. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBBIE MITCHELL, | D065854 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00077792-CU-OE-SC) |
| DELPHINUS ENGINEERING, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Reversed.

Law Offices of Janeen Carlberg and Janeen Carlberg for Plaintiff and Appellant.

Gordon & Rees, Roger M. Mansukhani, Stacey M. Cooper and Matthew G. Kleiner for Defendant and Respondent.

INTRODUCTION

Robbie Mitchell appeals from summary judgment in favor of Delphinus Engineering, Inc. (Delphinus) on his claims for disability discrimination, failure to prevent discrimination, and wrongful termination. He contends the court erred in determining he had not met his burden of establishing a triable issue of material fact as to whether his heart condition limited a major life activity sufficient to constitute a physical disability and as to whether Delphinus discharged him because of his heart condition.

We conclude Mitchell was not required to present evidence his heart condition limited a major life activity because heart disease constitutes a physical disability as a matter of law under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). We further conclude there is a triable issue of material fact as to whether Delphinus discharged Mitchell because of his heart condition versus his unsatisfactory job performance. We, therefore, reverse the judgment and remand the matter to the trial court for further proceedings.[1]

BACKGROUND

Mitchell has a heart condition. His employer, Delphinus, knew about his heart condition because some related health incidents occurred at work. In addition, Delphinus provided him an accommodation for his heart condition by allowing him to attend

---

[1]    Given our conclusions, we need not decide whether the court erred by failing to grant Mitchell a continuance under Code of Civil Procedure section 437c, subdivision (h), to present additional evidence in support of his claims.

quarterly meetings remotely so he would not risk having a health incident away from home.

Delphinus discharged Mitchell in December 2011. Mitchell then sued Delphinus for disability discrimination, failure to prevent discrimination, and wrongful termination, alleging Delphinus discharged him because of his heart condition.[2] Delphinus disputes this allegation and instead claims it discharged him for unsatisfactory job performance.

*Motion for Summary Judgment*

Delphinus moved for summary judgment, arguing Mitchell could not establish two essential elements of his claims: (1) his heart condition was a physical disability, and (2) Delphinus discharged him because of his heart condition. In support of its motion, Delphinus presented evidence Mitchell became the site operations manager of Delphinus's San Diego division office in 2008. He was "responsible for the facility, city and county compliance with hazmat, labor, time sheet charges, legitimate charges to contract for time sheet, time sheet approval, estimating, bid proposal, operations of the best interest of the company."

During Mitchell's tenure as site operations manager, the San Diego division consistently failed to meet the performance expectations of Delphinus's owners, and its full-time workforce dropped from 50 to 20 employees. The division's poor performance and need for more contract awards was discussed at each of the company's quarterly

---

[2]    Mitchell also asserted, but later voluntarily dismissed, claims for age discrimination, failure to accommodate, and unpaid wages.

meetings. In 2009 or 2010, one of the company's owners traveled to the division a couple of times to help Mitchell make the division's bids more competitive. However, by the end of 2011, the division was not securing enough contracts to cover its overhead expenses, and it had one contract that was projected to lose over $150,000. Mitchell acknowledged the division was recognized company-wide as "a loser."

In addition to the division's poor performance, Mitchell commonly made angry, inappropriate, and offensive remarks to his subordinates, peers, and superiors. For example, in March 2011, Delphinus's African-American environmental health and safety manager (safety manager) requested an inventory of the division's portable electric tools with manual locking devices. Mitchell informed him the division did not have any such tools. The safety manager expressed doubt about this information. Mitchell perceived the safety manager's remarks to be a direct credibility challenge, so he told the safety manager he could "get his [B]lack ass out here and check it himself."

The safety manager perceived Mitchell's remarks to be racist and indicated this to Mitchell. Mitchell told the safety manager it was the safety manager who was being racist for interpreting Mitchell's remarks that way. Mitchell also told the safety manager the remarks were not racist because the safety manager did, in fact, have a Black ass.

The exchange prompted the safety manager to file a formal complaint against Mitchell. Mitchell subsequently apologized to the safety manager, and Delphinus officially reprimanded Mitchell for the incident

A few months later, in July 2011, Mitchell sent an e-mail to several people, including some of Delphinus's owners, venting about a project, stating he was packing up

4

his personal belongings, and telling them they could all "kiss [his] ass." Delphinus verbally reprimanded him for the incident and directed him to send an apology e-mail.

In September 2011 Mitchell told one of his subordinates he was not going to be the "plantation cotton picker" for another manager or for the owners of Delphinus. He did not consider the phrase "plantation cotton picker" to be potentially offensive to African-Americans or a violation of Delphinus's anti-harassment policy. Rather, the phrase reflected his view the division was "[his] house, [his] business unit, [his] profit center" and he "should be able to run it the way [he] want[ed] to."

Mitchell also told the same subordinate that one of Delphinus's owners, who was of Indian descent, " 'should get on his magic carpet and fly out of there if he wanted things done differently.' " Mitchell did not consider his remark to be a violation of Delphinus's anti-harassment policy.

In November 2011 during the division's annual safety inspection, Mitchell became "extremely belligerent, loud, and disrespectful toward the safety manager." Mitchell told the safety manager he would not comply with any of the safety manager's findings and recommendations unless first cited and fined by the Occupational Safety Health Administration.

Around the same time, Delphinus decided to allow another manager to assume responsibility for the division. This manager also has a known heart condition and a history of hospitalization during his employment with Delphinus.

5

*Opposition to Summary Judgment Motion*

In opposition to Delphinus's summary judgment motion, Mitchell presented his own deposition testimony stating the owner of Delphinus who discharged him told him he was being discharged because of corporate concerns about his health. He also presented a declaration stating the person who discharged him told the administrative employee who prepared his termination packet to write in the packet he was being discharged because of his health.[3]

In addition, Mitchell supplied a checklist labeled, "Delphinus Engineering Supervisor's Checklist for Termination of Employees," used by the person who discharged him. Among the data collected on the checklist is the discharged employee's "Termination Classification." The Termination Classification choices are divided in to "Voluntary" and "Involuntary" categories. Among the choices in the Voluntary category is "Health." Among the choices in the Involuntary category are "Failure to perform duties" and "Release - Unable to Perform Satisfactorily." While the parties do not

---

[3]    The record contains excerpts from the depositions of the owner who discharged Mitchell and the administrative employee who prepared Mitchell's termination packet. The owner testified he told Mitchell his discharge was because of performance concerns. The owner denied telling Mitchell his discharge was because of health concerns.

The employee who prepared Mitchell's termination packet testified the owner told her Mitchell's discharge was because of health concerns. The owner testified he did not remember what, if anything, he told the employee about the reason for Mitchell's discharge. We did not consider these excerpts as they were submitted to the trial court after it granted summary judgment and, consequently, they are not properly before us in this appeal.

dispute Mitchell's discharge was involuntary, the checklist identifies his Termination

Classification as "Health."

*Reply to Summary Judgment Motion*

In reply to Mitchell's opposition, Delphinus argued Mitchell's deposition

testimony could not create a triable issue of material fact because he inconsistently

testified at his deposition both that Delphinus had discharged him for health reasons and

that none of Delphinus's owners, principals or senior managers led him to believe he was

being discharged because of a disability or a medical condition.  In addition, Delphinus

argued the "Health" reference on the termination checklist did not indicate the reason for

Mitchell's discharge, but instead indicated Delphinus was continuing Mitchell's health

insurance for a period of time.

*Decision*

After considering the parties' arguments and evidence, the trial court agreed with

Delphinus's position and granted summary judgment.

DISCUSSION

I

The standards guiding our review are well-settled:  " '[T]he party moving for

summary judgment bears the burden of persuasion that there is no triable issue of

material fact and that he is entitled to judgment as a matter of law.'  [Citation.]  'Once the

[movant] has met that burden, the burden shifts to the [other party] to show that a triable

issue of one or more material facts exists as to that cause of action … .'  [Citations.]  The

party opposing summary judgment 'may not rely upon the mere allegations or denials of

7

its pleadings,' but rather 'shall set forth the specific facts showing that a triable issue of material fact exists … .' [Citation.] A triable issue of material fact exists where 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]

"Where summary judgment has been granted, we review the trial court's ruling de novo. [Citation.] We consider all the evidence presented by the parties in connection with the motion (except that which was properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. [Citation.] We affirm summary judgment where it is shown that no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 643 (*Jade*).)

II

"A prima facie case for discrimination on grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44; accord, *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 378.) Delphinus obtained summary judgment on the grounds Mitchell could not establish his heart condition was, or was perceived by Delphinus to be, a physical disability and could not establish Delphinus discharged him because of his heart condition. We disagree with Delphinus on both points.

8

## A

As to the first point, Delphinus is plainly wrong. As part of FEHA, the Legislature found and declared: "Physical … disabilities include, but are not limited to, chronic or episodic conditions such as … heart disease." (Gov. Code, § 12926.1, subd. (c).) FEHA's implementing regulations similarly provide: " 'Disability' includes, but is not limited to … heart disease." (Cal. Code Regs., tit. 2, § 11065, subd. (d)(2)(C).) Thus, Mitchell's heart condition constitutes a physical disability as a matter of law. (See *Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 529.) Given this conclusion, we need not decide whether Delphinus perceived his heart condition to be a disability.

## B

As to the second point, there is unquestionably evidence in the record showing Delphinus may have discharged Mitchell because of performance concerns. His operation of the San Diego division did not meet the owners' expectations, he had difficulty working cooperatively with others, and his self-described salty language drove one employee to formally complain of harassment and exposed Delphinus to related litigation.

Nonetheless, there is also evidence showing Delphinus may have discharged Mitchell because of health concerns. The termination checklist signed by the owner of Delphinus who handled Mitchell's discharge notes Mitchell's Termination Classification, or reason for discharge, was "Health." Mitchell also stated in his declaration the owner

9

who discharged him told the administrative employee who prepared the termination packet to write in the packet Mitchell was being discharged because of his health.[4]

Delphinus suggests the "Health" notation on the checklist refers to the company's decision to continue Mitchell's health insurance for a period of time after his discharge. However, there is no declaration or deposition testimony supporting this inference nor is the inference reasonable based on the form's design. The form contains a narrow range of data fields: Name, E-mail, Dept, Phone, Position and Title, Location, Emp ID#, Supervisor, Supervisor Phone, Date Hired, Date Terminated, Termination Classification, and Eligible for Rehire. The Termination Classification data field purports to collect the reason for discharge and "Health" is one of the available Termination Classifications, albeit for voluntary terminations. None of the data fields purports to collect information related to health insurance.

Even if the checklist could be reasonably interpreted in the manner Delphinus suggests, Mitchell's interpretation of the checklist is also reasonable, particularly in light of the information given to the administrative employee who prepared the termination packet. Accordingly, the checklist is sufficient to raise a triable issue of material fact as to whether Delphinus discharged him because of his heart condition. (Code Civ. Proc., § 437c, subd. (c); *Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 318 [a party

---

[4]     Mitchell gave arguably conflicting testimony about what he was told regarding the reason for his discharge. (See Background, *ante.*) We need not resolve the conflict or consider the testimony to decide this appeal.

may successfully oppose a motion for summary judgment by showing the evidence permits conflicting inferences].)

DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court for further proceedings consistent with this opinion.  Appellant is awarded his appeal costs.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


McINTYRE, J.

12