Filed 8/9/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RED & WHITE DISTRIBUTION, LLC, et al., <br><br>     Plaintiffs and Appellants, <br><br>     v. <br><br> OSTEROID ENTERPRISES, LLC., et al., <br><br>     Defendants and Respondents. | B291188 <br><br> (Los Angeles County Super. Ct. No. BC500304, C/W BC500459) |
| OSTEROID ENTERPRISES, LLC., et al., <br><br>     Plaintiffs and Respondents, <br><br>     v. <br><br> RED & WHITE DISTRIBUTION, LLC, et al. <br><br>     Defendants and Appellants | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge. Reversed in part and remanded with directions.

Kozberg & Bodell and Gregory Bodell for Appellants Red & White Distribution Sacramento and Mikhail Cheban.

Baranov & Wittenberg and Michael M. Baranov for Appellant Red & White Distribution.

Rosenberg Mendlin & Rosen, Joyce S. Mendlin and Roger M. Rosen for Respondents.

_____

## INTRODUCTION

Red & White Distribution, LLC, Red & White Distribution Sacramento LLC, and Mikhail Cheban (collectively, R&W) appeal a judgment entered after R&W allegedly defaulted in making payments to Osteroid Enterprise, LLC and Eric Oster (collectively, the Osteroid Parties) under a settlement agreement. The principal issue in this appeal is whether the stipulated judgment constitutes an unenforceable penalty. A secondary issue is whether the court's finding that R&W breached the settlement agreement is supported by substantial evidence.

Under Civil Code[1] section 1671, subdivision (b), "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." A liquidated damages clause will generally be considered unreasonable if it "bears no reasonable relationship to the range of actual damages that the parties could have anticipated would

_____

[1]     All further statutory references are to the Civil Code unless otherwise indicated.

flow from a breach." (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 (*Ridgley*).)

In this case, the parties entered into a settlement agreement providing that if R&W defaulted, the Osteroid Parties could file a stipulation for entry of judgment, with the amount of the judgment being $700,000 more than the settlement amount, plus interest and attorneys' fees. We conclude the court erred in entering the stipulated judgment because the additional $700,000 is an unenforceable penalty under section 1671. The court's factual determinations regarding R&W's breach of the agreement, however, were supported by substantial evidence. Accordingly, we reverse in part and remand to the trial court with directions to reduce the judgment to the $2.1 million settlement amount, with further adjustments as set forth below, plus interest from the date of the execution of the stipulated judgment.

We publish to remind practitioners whose clients settle a dispute involving payments over time how to incentivize prompt payment properly, and what may happen if done incorrectly.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Osteroid Parties loaned R&W $1.8 million. After the Osteroid Parties declared the loan in default, R&W filed a complaint alleging the loan was usurious and unenforceable. In response, the Osteroid Parties filed a complaint against R&W[2] alleging five causes of action, including breach of contract, and

_____

[2] The complaint also named other defendants that are not parties to this appeal.

3

seeking $1.8 million in damages, plus interest and attorneys' fees. The court consolidated the cases.

The Osteroid Parties filed a motion for summary adjudication of the breach of contract cause of action, which the court granted. The parties then settled all claims for $2.1 million pursuant to a "Payment Agreement," which included a schedule with varying installment amounts to be paid by R&W between December 15, 2014 and December 31, 2015.

The parties also executed a stipulation for entry of judgment (attached to the Payment Agreement as Exhibit A), which the Osteroid Parties could file by ex parte application in the event "of any failure by [R&W] to timely cure any non-payment . . . ." The stipulation for entry of judgment stated in the event of a default on the payment plan, R&W is "liable to pay $2,800,000 to the Osteroid Parties, plus interest accrued thereon at the post-judgment legal rate from the date of the execution of this stipulated judgment. This total amount shall be reduced by any payments that [R&W] paid under the Payment Agreement, with payments applied first to any outstanding interest before being applied to the principal amount of this stipulated judgment."

Oster died on March 2, 2017. Tatiana Sedycheva, Oster's widow and Special Administrator of Oster's estate, retained counsel and sent a notice of default on February 2, 2018, and a revised notice of default on February 9, 2018, stating "unless the default in payments is cured within 5 days of this letter . . . I will shortly thereafter seek entry of judgment on an *ex parte* basis, . . . ."

On February 16, 2018, Sedycheva filed an ex parte application to enforce the stipulation for judgment under Code of

4

Civil Procedure section 664.6. The trial court continued the ex parte hearing and ordered additional briefing, including a supplement from R&W with proof of what amounts had been paid. R&W filed a supplemental opposition arguing R&W "fully satisfied [its] obligations under the Payment Agreement on February 8, 2016." It claimed Osteroid signed an electronic receipt on February 5, 2016 for "32 kilos of pure gold valued at $1,177,000 and $83,000 in cash" which stated "'[a]s of today there is only outstanding [balance] of $50,000 to be paid Monday Februaey [sic] 8, 2016.'" It further claimed the remaining "$50,000 was paid by check on February 5, 2016."

The trial court granted the application to enforce the stipulated judgment, reasoning "no one disagrees that whatever was due was not paid on time. I'm not seeing that anywhere, and that being the case, the agreement would have been breached." The court also held the stipulated judgment did not contain a liquidated damages provision, but rather "a number that was reasonable from [the parties'] perspectives as to the damages in the case . . . ." Based on the terms of the stipulated judgment, the court entered judgment for $3,654,655. The court advised R&W it could file a demand for satisfaction of judgment and request a stay of the judgment pending an evidentiary hearing on the dispute over the amount of the debt R&W previously paid. R&W timely appealed from the judgment.

5

# DISCUSSION

## I. The Trial Court Did Not Err In Determining R&W Breached the Agreement

A motion to enforce a settlement agreement under Code of Civil Procedure section 664.6 provides a summary procedure "for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809.) "Factual determinations made by a trial court on a section 664.6 motion to enforce a settlement must be affirmed if the trial court's factual findings are supported by substantial evidence. [Citations.] Other rulings are reviewed de novo for errors of law. [Citation.]." (*Id*. at p. 815.)

The settlement agreement provides if the "Osteroid Parties do not timely receive a payment," they "shall provide notice of such non-payment" and R&W "shall then have five (5) calendar days . . . to cure the deficiency." It also provides, in the event R&W fails to timely cure, the "Osteroid Parties may file the Stipulated Judgment on *ex parte* notice . . . ." R&W concedes it received a notice of default before Sedycheva filed the ex parte application.[3] Setting aside the conflicting evidence of whether, and how much, R&W paid of the settlement amount, R&W's own evidence demonstrated the payments were not paid timely in accordance with the payment schedule. Because R&W breached the agreement, the Osteroid Parties were entitled under the terms of the agreement to judgment for "$2,800,000 . . . plus

---

[3] R&W argues the notice was sent two years after the alleged default, but nothing in the agreement requires the notice be sent within a certain number of days of the default.

interest accrued thereon at the post-judgment legal rate from the date of the execution of this stipulated judgment."

The Payment Agreement does not appear to allow for litigation of the amount that had been paid, if any, in advance of entry of the stipulated judgment. This is something the trial judge commented on: "[T]his is different from the language that I usually see because a stipulation for judgment usually says that if there is a breach, the plaintiff is to recover a judgment for X amount minus whatever has been paid" but here the agreement states "judgment shall be entered . . . in the event of default" and then the "total amount shall be reduced by any payments that judgment debtors have paid."

Thus, the court entered judgment for $2.8 million plus interest (less two agreed upon payments), noting R&W may file a "demand for a satisfaction of judgment" and request a stay of the judgment pending an evidentiary hearing to determine whether the judgment should "be reduced by any [additional] payments that [R&W] . . . paid under the Payment Agreement . . . ."

R&W contends the trial court erred in entering judgment because it: (1) ignored evidence of R&W's payment in full of the settlement agreement amount; and (2) concluded R&W breached the agreement because not all payments were timely made without giving R&W an opportunity to refute this finding. We reject these arguments.

First, the court was well within its discretion in declining to give any weight to a "receipt" purportedly containing Osteroid's electronic signature or testimony offered in support of its authentication. In opposition to Sedycheva's ex parte application, R&W attached a receipt to the declaration of Mikhail Cheban, the President of Red & White Distribution Sacramento,

7

LLC, stating the receipt is a "true and correct copy of a receipt that was signed by Eric Oster in my presence for 32 kilos of gold and $83,000 in cash I caused to be paid to him." As the court correctly stated, "as to this supposed-receipt . . . signed electronically, you would have to bring in your experts . . . to talk about these machines and how they work. I don't know. Mr. Oster may have signed for something at some prior occasion, and the language next to that receipt subsequently gone back and been redacted and changed to say what the defendant now says it's claimed to have said at the time the signature was rendered. So this [is] kind of almost like a backdating process, or whether this is, in fact, his signature at all. Plaintiff has said it's not." Thus, the trial court had insufficient evidence to determine R&W paid the settlement in full, and was within its discretion to defer resolution of that issue to a post-judgment evidentiary hearing.

Second, R&W had ample opportunity to present evidence of timely payments, if such evidence existed. Although the agreement permitted the Osteroid Parties to file the stipulated judgment on ex parte notice, the court continued the ex parte hearing, and ordered additional briefing, including a supplement from R&W setting forth proof of what amounts had been paid. The only evidence R&W offered, however, demonstrated payments were purportedly made in February 2016 (over a month past due). Accordingly, the trial court's determination that R&W breached the agreement is supported by substantial evidence.

## II. The Stipulated Judgment Is an Unenforceable Penalty

As noted above, under section 1671, subdivision (b), "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671 if it "bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." (*Ridgley, supra,* 17 Cal.4th at p. 977.) Whether an amount to be paid upon breach is to be treated as an enforceable liquidated damages provision or as an unenforceable penalty is a question of law, which we review de novo. (*Harbor Island Holdings v. Kim* (2003) 107 Cal.App.4th 790, 794.)

R&W contends the trial court erred in entering the stipulated judgment using $2.8 million as the total settlement amount. It contends $700,000 of that total was an unenforceable penalty barred by section 1671 because R&W only owed $2.1 million under the settlement agreement. We agree.

In *Ridgley,* our Supreme Court held "the charge of six months' interest on the entire principal, imposed for any late payment or other default, cannot be defended as a reasonable attempt to anticipate damages from default." (*Ridgley, supra*, 17 Cal.4th at p. 981.) It explained, "California law has . . . long recognized that a provision for liquidation of damages for contractual breach. . . can under some circumstances be designed as, and operate as, a contractual forfeiture. To prevent such

9

operation, our laws place limits on liquidated damages clauses." (*Id*. at pp. 976-977.) Justice Mosk dissented on the ground there "is nothing illogical or unfair about the agreement." (*Id*. at p. 983.) Instead, "[t]he prepayment clause was a negotiated agreement between sophisticated commercial parties." (*Ibid*.) As the majority stated, however, "[t]hat plaintiffs are small business owners rather than consumers, . . . does not deprive them of section 1671's protection against unreasonable penalties . . . ." (*Id*. at p. 981, fn. 5.)

In this case, the stipulated judgment for $2.8 million bears no reasonable relationship to the range of actual damages the parties could have anticipated from a breach of the agreement to settle the dispute for $2.1 million. "[D]amages for the withholding of money are easily determinable—i.e., interest at prevailing rates . . . ." (*Sybron Corp. v. Clark Hosp. Supply Corp*. (1978) 76 Cal.App.3d 896, 900.) The judgment, however, provided for interest at the legal rate from the date of the execution of the stipulated judgment, attorneys' fees to enforce the judgment, plus $700,000 more than the parties agreed to in their settlement agreement. This additional $700,000 was an unenforceable penalty. (*Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495, 501 (*Greentree*) [holding the stipulated judgment amount for $45,000 constituted an unenforceable penalty where the underlying settlement was for $20,000].)

The trial court declined to follow *Ridgley* and *Greentree*, stating "I'm not inclined to go along with the argument that this was a liquidated damage settlement per whatever that case was. I'd be inclined to follow the later case [*Jade Fashion & Co., Inc. v. Harkham Industries, Inc*. (2014) 229 Cal.App.4th 635 (*Jade*

*Fashion*)] and, frankly, any other case I could find. I think that first case [presumably *Greentree*] is bad law. Bad cases make bad law."

*Jade Fashion* is not at all inconsistent with *Ridgley* and *Greentree*, however. In *Jade Fashion*, the court held it is permissible under section 1671 for the parties to agree to a discount for timely payment of an admitted debt. (*Jade Fashion, supra,* 229 Cal.App.4th at p. 649.) Thus, based on *Jade Fashion*, if the parties stipulate that the debt is a certain number, they may agree that it may be discharged for that number minus some amount. They may also agree that in the event the debtor does not timely make the agreed payments, a stipulated judgment may be entered for the full amount.

But that is not how the parties in this case structured their agreement. Despite the Osteroid Parties' repeated claims to the contrary, nothing in the settlement agreement nor the appellate record demonstrates R&W admitted it owed $2.8 million. Rather, the settlement agreement states R&W is "liable to pay to the Osteroid Parties $2,100,000.00 ("Total Payment Plan Amount") plus interest thereon . . . ." Had the parties intended to settle for $2.8 million, but apply a discount for timely payments, they could have done so expressly. The parties could have, but did not, include terms in the agreement stating R&W is liable to pay the Osteroid Parties $2.8 million, but so long as all payments are timely made in accordance with the payment schedule, the amount due shall be discounted to $2.1 million.

The rules in this area may be subject to legitimate criticism that sophisticated parties should be free to include a substantial penalty for default. While we generally support freedom of contract, on this issue both the Legislature and our Supreme

11

Court have spoken, however, and we are bound by their pronouncements.  Thus, we conclude the stipulated judgment constitutes a $700,000 unenforceable penalty for breach of the agreement.[4]

[4]     At one of the hearings, the trial court stated "the parties themselves attempted to reach a number that was reasonable from all of their perspectives as to the damages in the case, and I'm convinced that's what the settlement agreement in this case reflected, no liquidated damage provision."  The Osteroid Parties contend this comment reflects a finding by the trial court that the parties agreed the debt was $2.8 million, exclusive of any penalty. We do not read it that way, but if we did, it would not be supported by substantial evidence, or any evidence.

## DISPOSITION

The judgment is reversed in part and the matter is remanded to the trial court with directions to reduce the judgment to $2.1 million, less agreed upon payments of $45,000 and $56,000, plus interest from the date of the execution of the stipulated judgment. On remand, the trial court may also conduct one or more evidentiary hearings to determine the portion of the judgment that has been satisfied. It may also hear and decide a motion for attorneys' fees under the attorneys' fees provision in the stipulated judgment. The parties shall bear their own costs on appeal.

## CERTIFIED FOR PUBLICATION

CURREY, J.

WE CONCUR:


MANELLA, P. J.


WILLHITE, J.

13