Filed 12/4/24  Red & White Distribution v. Osteroid Enterprises CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| RED & WHITE DISTRIBUTION, LLC, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> OSTEROID ENTERPRISES, LLC, et al., <br><br> Defendants and Appellants. | B329170 <br><br> (Los Angeles County Super. Ct. No. BC500304) |
| OSTEROID ENTERPRISES, LLC, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> RED & WHITE DISTRIBUTION, LLC, et al. <br><br> Defendants and Respondents. | (Los Angeles County Super. Ct. No. BC500459) |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge. Affirmed and remanded with directions.

Rosenberg Mendlin & Rosen, Joyce S. Mendlin and Roger M. Rosen for Appellants.

Kozberg & Bodell and Gregory Bodell for Respondents Red & White Distribution Sacramento and Mikhail Cheban.

Baranov & Wittenberg and Michael M. Baranov for Respondent Red & White Distribution, LLC.

_____

**INTRODUCTION**

This is the second appeal in these consolidated cases. In 2014, the parties entered into a settlement agreement requiring Red & White Distribution, LLC, Red & White Distribution Sacramento LLC, and Mikhail Cheban (collectively, R&W) to pay Osteroid Enterprise, LLC and Eric Oster[1] (collectively, the Osteroid Parties) $2.1 million in varying installments pursuant to a payment plan. After R&W breached the agreement, the trial court (Hon. Barbara A. Meiers) entered judgment against it based on the terms of the parties' stipulated judgment. R&W appealed from the judgment. A different panel of this court reversed, in part, based on its conclusion that the stipulated judgment contained an unenforceable penalty, and remanded the matter to the trial court with directions to reduce the judgment to $2.1 million, less agreed upon payments of $45,000 and $56,000, plus interest from the date of the execution of the stipulated judgment. (*Red & White Distribution LLC v. Osteroid Enterprises, LLC* (2019) 38 Cal.App.5th 582 (*Red & White I*).) The panel further held that on remand, the trial court may conduct

_____

[1] Eric Oster died in 2017. Appellant Tatiana Sedycheva is Oster's widow and Special Administrator of Oster's estate.

one or more evidentiary hearings to determine the portion of the judgment that has been satisfied.

On remand, after a two-day evidentiary hearing, the trial court (Hon. Michelle Williams Court) issued a statement of decision in which it ruled that R&W satisfied all but $63,184 of its obligation to the Osteroid Parties as of October 18, 2022. The Osteroid Parties now challenge that ruling, asserting: (1) the trial court erred by not requiring expert testimony to prove the authenticity of an electronic receipt; (2) the trial court erred by excluding certain documents from evidence; (3) substantial evidence does not support the trial court's findings because R&W's witnesses were not credible; and (4) the trial court used an incorrect method to calculate the amount of the judgment that had been satisfied. For the reasons discussed below, we affirm. We further direct the trial court to enter an order of partial satisfaction of judgment stating the judgment has been satisfied, except for $63,184, as of October 18, 2022.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual background and proceedings leading to first appeal, as described in Red & White I*

"The Osteroid Parties loaned R&W $1.8 million. After the Osteroid Parties declared the loan in default, R&W filed a complaint alleging the loan was usurious and unenforceable. In response, the Osteroid Parties filed a complaint against R&W[2] alleging five causes of action, including breach of contract, and seeking $1.8 million in damages, plus interest and attorneys' fees. The court consolidated the cases.

---

2    The complaint also named other defendants that are not parties to this appeal.

"The Osteroid Parties filed a motion for summary adjudication of the breach of contract cause of action, which the court granted. The parties then settled all claims for $2.1 million pursuant to a 'Payment Agreement,' which included a schedule with varying installment amounts to be paid by R&W between December 15, 2014 and December 31, 2015.

"The parties also executed a stipulation for entry of judgment (attached to the Payment Agreement as Exhibit A), which the Osteroid Parties could file by ex parte application in the event 'of any failure by [R&W] to timely cure any non-payment . . . .' The stipulation for entry of judgment stated in the event of a default on the payment plan, R&W is 'liable to pay $2,800,000 to the Osteroid Parties, plus interest accrued thereon at the post-judgment legal rate from the date of the execution of this stipulated judgment. This total amount shall be reduced by any payments that [R&W] paid under the Payment Agreement, with payments applied first to any outstanding interest before being applied to the principal amount of this stipulated judgment.'

"Oster died on March 2, 2017. Tatiana Sedycheva, Oster's widow and special administrator of Oster's estate, retained counsel and sent a notice of default on February 2, 2018, and a revised notice of default on February 9, 2018, stating 'unless the default in payments is cured within 5 days of this letter . . . I will shortly thereafter seek entry of judgment on an *ex parte* basis . . . .'

"On February 16, 2018, Sedycheva filed an ex parte application to enforce the stipulation for judgment under Code of Civil Procedure section 664.6. The trial court continued the ex parte hearing and ordered additional briefing, including a

4

supplement from R&W with proof of what amounts had been paid. R&W filed a supplemental opposition arguing R&W 'fully satisfied [its] obligations under the Payment Agreement on February 8, 2016.' It claimed Osteroid signed an electronic receipt on February 5, 2016 for '32 kilos of pure gold valued at $1,177,000 and $83,000 in cash' which stated '[a]s of today there is only [an] outstanding [balance] of $50,000 to be paid Monday Februaey [*sic*] 8, 2016.' It further claimed the remaining '$50,000 was paid by check on February 5, 2016.'

"The trial court [Hon. Barbara A. Meiers] granted the application to enforce the stipulated judgment, reasoning '[N]o one disagrees that whatever was due was not paid on time. I'm not seeing that anywhere, and that being the case, the agreement would have been breached.' The court also held the stipulated judgment did not contain a liquidated damages provision, but rather 'a number that was reasonable from [the parties'] perspectives as to the damages in the case . . . .' Based on the terms of the stipulated judgment, the court entered judgment for $3,654,655. The court advised R&W it could file a demand for satisfaction of judgment and request a stay of the judgment pending an evidentiary hearing on the dispute over the amount of the debt R&W previously paid. R&W timely appealed from the judgment." (*Red & White I*, *supra*, 38 Cal.App.5th at pp. 585-586, original italics.)

## B. Red & White I Holding and Remand

The *Red & White I* panel concluded the "trial court's determination that R&W breached the agreement [was] supported by substantial evidence." (*Red & White I, supra*, 38 Cal.App.5th at p. 588.) The panel further concluded, however, that the stipulated judgment for $2.8 million included an

5

unenforceable penalty because it "bears no reasonable relationship to the range of actual damages the parties could have anticipated from a breach of the agreement to settle the dispute for $2.1 million." (*Id.* at pp. 588-589.) It therefore reversed the judgment in part, and remanded the matter "to the trial court with directions to reduce the judgment to $2.1 million, less agreed upon payments of $45,000 and $56,000, plus interest from the date of the execution of the stipulated judgment." (*Id.* at p. 590.) The panel further directed that "[o]n remand, the trial court may also conduct one or more evidentiary hearings to determine the portion of the judgment that has been satisfied."[3] (*Ibid.*)

### C. New Judgment Entered after Remand

After the remittitur issued, the Osteroid Parties moved the trial court for a new entry of judgment. The case was then reassigned to Judge Michelle Williams, and the motion for entry of judgment was set for hearing on January 27, 2020.

Before the hearing on the motion for entry of judgment, R&W's counsel sent two letters to the Osteroid Parties' counsel (dated November 22, 2019 and December 26, 2019, respectively)

---

3 In *Red & White I*, the panel noted the "Payment Agreement does not appear to allow for litigation of the amount that had been paid, if any, in advance of entry of the stipulated judgment." (*Red & White I, supra*, 38 Cal.App.5th at p. 587.) Thus, under the terms of the parties' agreement, the trial court was required to enter judgment in the full amount in the event of default, and *then* the total amount shall be reduced by any payments that judgment debtors may have already paid. This is unusual and led to some of the issues in this case regarding the calculation of the remaining debt owed, as described in detail in section IV below.

6

requesting acknowledgement of satisfaction of judgment or, in the alternative, acknowledgment of partial satisfaction pursuant to Code of Civil Procedure sections 724.050 and 724.110.[4] The Osteroid Parties did not execute a full or partial acknowledgment of satisfaction of judgment based on their position that a new judgment must be entered and then a partial satisfaction may be filed.

R&W then filed a motion for an order requiring the Osteroid Parties to deliver an acknowledgement of full or partial satisfaction of judgment (motion for satisfaction).

The trial court held a hearing on the motion for entry of judgment, and took the matter under submission. On April 14, 2020, the court entered judgment against R&W in amount of $3,056,153, calculated as follows: $2.1 million, less agreed upon payments of $45,000 and $56,000, plus interest on the balance in the amount of $1,057.153 (10 percent interest from the date of the stipulated judgment). The trial court explained: "Following the explicit directions of the Court of Appeal, the principal minus the agreed-upon payments is the amount on which interest is

4      Code of Civil Procedure section 724.050, subdivision (a) provides, in relevant part: "If a money judgment has been satisfied, the judgment debtor . . . may serve personally or by mail on the judgment creditor a demand in writing that the judgment creditor do one or both of the following: [¶] (1) File an acknowledgment of satisfaction of judgment with the court. [¶] (2) Execute, acknowledge, and deliver an acknowledgment of satisfaction of judgment to the person who made the demand." Section 724.110 similarly provides that a judgment debtor may serve a demand that the judgment creditor deliver an acknowledgement of partial satisfaction of judgment to the person who made the demand. All further undesignated statutory references are to the Code of Civil Procedure.

calculated." The court continued the motion for satisfaction to May 4, 2020 for an evidentiary hearing.

### D. Evidentiary Hearing on Payments Made

The hearing on the motion for satisfaction was delayed due to the Covid-19 pandemic. R&W filed a new notice of motion and motion for satisfaction in July 2022, and the court set an evidentiary hearing for October 17 and 18, 2022.

Before the evidentiary hearing, the parties stipulated that, in addition to the payments of $45,000 and $56,000, R&W also made an additional 26 payments totaling $914,679 between December 15, 2014 and February 5, 2016. The stipulation further stated the only issues that remained in dispute were whether the following two payments were made: (1) February 5, 2016 payment in gold of $1,177,000; and (2) February 5, 2016 payment in cash of $83,000. The evidentiary hearing was, therefore, limited to those two issues.

At the hearing, Cheban testified how he came into possession of gold, and the payments he allegedly made in the amounts of $1,177,000 in gold and $83,000 in cash. Specifically, Cheban testified he owned a pawn shop, and the gold was from accumulated collateral for unpaid customer loans on which the pawn shop had foreclosed. He explained: customers of the pawn shop pledge gold jewelry as collateral for a loan; the pawn shop teller weighs the gold and determines its quality; a loan is then given in cash to the customer for four months; if the loan is not repaid, the collateral becomes inventory of the pawn shop; and the pawn shop keeps detailed records of the collateral and the foreclosed property as required under California law.

Cheban further testified that Trial Exhibit 26-454 was a printout of the electronic record, created by the pawn shop,

listing the foreclosed property of the pawn shop as of February 1, 2016. The document showed the pawn shop had 9,482 items in its inventory with a collateral value of $1,775,097.40. He then testified that Trial Exhibit 27 was a printout of the electronic record of the pawn shop's foreclosed property as of March 1, 2016. It showed the pawn shop had only 2,360 items in its inventory with a collateral value of $456,074.00 as of March 1, 2016.

Cheban explained the reason for the approximately $1,300,000 difference between the collateral value on February 1, 2016 and March 1, 2016: "Actually, it exactly shows the – when I went to [the] pawn shop to pick up jewelry, I took jewelry from the first list, 1.77 million, and I smelt it, and the balance was – in other words, which was not smelted is this [$]456,000 which is on [Trial] Exhibit 27 [ ]." He further explained that after he smelted the gold he "exchange[d] it for pure gold and brought [it] into [the] pawn shop. And after I gave that gold to Eric Oster. And that's the reason on March 1st the balance of gold jewelry was [$]1.3 million less, in other words."

When Cheban took the gold to be smelted to an "authorized dealer[,]" the dealer "exchange[d] [the gold] for pure gold in – sometimes in [the] form of [a] bar, sometimes in [the] form of small nuggets, so-called nuggets. It is 24 caret [*sic*] gold. Usually it goes into [a] one kilo plastic jar . . ."

Cheban then testified that on February 5, 2016, Eric Oster came to the pawn shop, and Cheban's employee placed "32 jars of gold" into a "suitcase [and] helped [Eric] Oster to bring it into [his] car." The total value of the gold was $1,177,000.

Regarding the cash payment of $83,000, Cheban testified that on February 5, 2016, he "did not have enough gold, so [his] employee . . . brought gold and cash money. It was $83,000."

9

Cheban explained he had a large amount of cash on hand in the pawn shop because "pawn shop dealing with customer with cash [*sic*]. . . . so pawn shop[s] [are] supposed to have cash on premises. Usually [my] pawn shop [has] [$100,000] to [$]150,000 in cash every day."

Cheban further testified that Trial Exhibit 9-26 was a "receipt which was created by Eric Oster and signed [o]n [the] pawn shop computer on February 5, 2016" showing the payments of gold and $83,000 in cash (the electronic receipt). Cheban explained how the electronic receipt system worked: "It's a special pad, and you can put your signature on this pad. [¶] . . . [¶] [a]nd software gonna [*sic*] transfer the signature into electronic record." He then stated he saw Eric Oster sign the receipt. The trial court admitted the electronic receipt into evidence over the Osteroid Parties' counsel's objection.

R&W also called Jack Shut to testify. Shut testified he owns several pawn shops and he purchased jewelry from Cheban for purposes of reselling it in his store in the past. "Years ago[,]" he saw Cheban's employee bring out a bag of gold jars, and the employee helped Eric Oster bring the gold jars to Oster's car.

R&W called a third witness, Alex Maimon. Maimon testified he designed and built a house for Eric Oster and that Oster made his final payment for the work in the form of 27 jars of gold in February 2016. He estimated the gold was worth about $1 million.

Both parties called Tatiana Sedycheva, Eric Oster's widow, to testify. Sedycheva testified Oster did not deal in gold, she never saw jars of gold in the house, and Maimon did not come to her house to pick up 27 jars of gold.

Finally, both parties called their respective experts to testify about the amount of the judgment that remained due based on different scenarios. R&W's expert, Jacqueline Benyamini, is a certified public accountant and forensic accountant. She testified the correct method of calculating interest was to start with the principal amount of $2.1 million, then apply interest at a rate of 10 percent, and then apply payments made as of the date they were made—first against accrued interest, and then any balance should be applied against principal. Assuming the $1.177 million payment in gold and $83,000 in cash, application of this method resulted in a $63,184 outstanding balance at the time of the evidentiary hearing. A chart demonstrating Benyamini's calculations was admitted into evidence. Benyamini further testified she applied payments made as of the date the parties stipulated they were received because "[t]ypically when you perform an interest calculation, this is how you would calculate interest because interest is to compensate for the lost use of money, and if the parties have received the money, then it would be improper to calculate interest again because they didn't lose the use of the money."

The Osteroid Parties' expert, Wesley L. Nutten, is a litigation and valuation consultant. He offered alternative methods of calculating interest based on different assumptions. Nutten explained he treated the agreed upon payments totaling $914,000 as if they were made in March 2020 even though the parties stipulated they were made between December 15, 2014 and February 5, 2016. When Nutten applied the payments on the date the parties agreed they were made, however (as Benyamini did), and also assumed payments of $1.177 million and $83,000 in

11

February 2016, he came to the same number as Benyamini, i.e., "$63,000 and change."

### E. Statement of Decision

The trial court issued a statement of decision on February 16, 2023. The court found Cheban's testimony "to be credible and based on personal knowledge." It further found the testimony of Maimon and Shut to be credible. By contrast, the trial court found Sedycheva "demonstrated very little personal knowledge of the facts salient to this case" and therefore the court "attache[d] less weight to her testimony." Based on these findings, the trial court concluded that "Cheban gave Oster $1,177,000 in smelted gold and $83,000 in cash in February 2016." The court adopted the calculation contained in Benyamini's chart, and found "the total principal and interest due and owing as of October 18, 2022 was $63,184 and judgment debtors are entitled to an order of partial satisfaction of judgment." The court ordered counsel for R&W to "prepare, serve, and submit a Proposed Order in conformity with [its] decision."

### F. This Appeal

Rather than submitting a proposed order of partial satisfaction of judgment—as the court ordered it to do—R&W submitted a proposed amended judgment stating judgment is entered against R&W in the amount of $63,184. The trial court (Hon. Colin P. Leis) denied the request for entry of an amended judgment, reasoning R&W did "not identify a procedure by which the court may 'amend' the April 2020 judgment. The nunc pro tunc principles to which [R&W] point[s] do not apply because the April 2020 judgment when entered was the judgment the court intended to enter."

12

R&W then filed a notice of entry of judgment or order, attaching the court's February 16, 2023 statement of decision. No order of partial satisfaction has been entered.

The Osteroid Parties appeal from the statement of decision, which R&W has apparently treated as a final order by attaching it to the notice of entry of judgment or order.[5]

## DISCUSSION

### I. Applicable Law and Standard of Review

Chapter 1, division 5 of Code of Civil Procedure section 724.010 et seq. sets forth the procedures for satisfaction of judgment. Under section 724.110, a judgment debtor may serve on the judgment creditor a demand that the judgment creditor "execute, acknowledge, and deliver an acknowledgement of partial satisfaction of judgment to the person who made the demand." (§ 724.110, subd. (a).) "If the judgment creditor does not comply with the demand within the time allowed, the judgment debtor . . . may apply to the court on noticed motion for an order requiring the judgment creditor to comply with the demand." (§ 724.110, subd. (b).) "If the court determines that the judgment

---

5 Neither party argues the statement of decision is not appealable. In the interest of conserving judicial resources, we treat the statement of decision as an appealable order. (See *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 ["The general rule is that a statement or memorandum of decision is not appealable. [Citations.] The rule's practical justification is that courts typically embody their final rulings not in statements of decision but in orders or judgments. Reviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits"].)

13

has been partially satisfied and that the judgment creditor has not complied with the demand, the court shall make an order determining the amount of the partial satisfaction and may make an order requiring the judgment creditor to comply with the demand." (*Ibid*.) As the moving party, the judgment debtors have the burden of proving partial or full satisfaction of the judgment. (See *Garg v. Garg* (2022) 82 Cal.App.5th 1036, 1050 ["[a]bsent specific law to the contrary, general principles of law dictate that the moving party has the burden of proof to establish facts by a preponderance of the evidence"].)

"On appeal, we will uphold the factual findings supporting the trial court's decision on a motion for satisfaction of judgment if the findings are supported by substantial evidence." (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 748.) "This traditional standard of review is highly deferential. It has three pillars. First, we accept all evidence supporting the trial court's order. Second, we completely disregard contrary evidence. Third, we draw all reasonable inferences to affirm the trial court. These three pillars support the lintel: We do not reweigh the evidence. [Citation.] Under this standard of review, parties challenging a trial court's factfinding bear an "'enormous burden.'" (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-582 (*Schmidt*).) Thus, "[w]hen a civil appeal challenges findings of fact, the appellate court's power begins and ends with a determination of whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court findings. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." (*Id.* at p. 582.)

We review evidentiary rulings for abuses of discretion. (*Jane IL Doe v. Brightstar Residential Inc.* (2022) 76 Cal.App.5th 171, 176.) Even if the court erred, prejudice from an evidentiary ruling is not presumed. The burden is on the party challenging the ruling to demonstrate the error was prejudicial. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 119 (*Truong*).)

## II. Substantial Evidence Supports the Trial Court's Findings

As discussed above, per the parties' stipulation, the only issues that remained to be determined at the evidentiary hearing were whether R&W paid the Osteroid Parties $1.177 million in gold and $83,000 in cash, as R&W claimed. There is ample evidentiary support in the record of these payments, including: (1) Cheban's detailed testimony regarding how he came into possession of the gold, why he gave Eric Oster $83,000 in cash and where the cash came from, and the day he gave the gold and cash to Eric Oster at Cheban's pawn shop; (2) pawn shop documents listing the foreclosed property of the pawn shop, which showed that as of February 1, 2016, the pawn shop had 9,482 items in its inventory with a collateral value of $1,775,097.40 and on March 1, 2016, the pawn shop had only 2,360 items in its inventory with a collateral value of $456,074; (3) Shut's testimony that he personally observed the gold and cash being delivered to Eric Oster at the pawn shop; and (4) Maimon's testimony that he designed and built a house for Eric Oster, and Oster made his final payment for the work in the form of 27 jars of gold in February 2016. Finding this testimony credible, the trial court concluded that Cheban took gold jewelry inventory from his pawn shop to a smelter to be smelted into

15

pure gold, and gave Oster $1,177,000 in smelted gold and $83,000 in cash in February 2016.

The Osteroid Parties contend the trial court's findings are unsupported by substantial evidence because Maimon and Cheban's testimony was not credible. Specifically, they argue Maimon's testimony should not be believed because it "strains all credibility to believe that Eric Oster just happened to owe [ ] Cheban's former employee Maimon over $1,000,000 for Maimon's limited role in the construction of a home, completed about 3 and one-half years prior, and that Eric Oster paid Maimon with the very same gold, valued at $1,177,000." They similarly argue that Cheban's testimony is not credible because he claimed to have taken gold jewelry to a smelter and had paperwork from the smelter but failed to produce the paperwork at trial, and "[it] is not credible that someone owing $1,200,000 in settlement of a lawsuit would pay in gold and not thoroughly document such a transaction with lawyers . . . ." But these argument ignore the standard of review: Witness credibility is within the trial court's "exclusive province" and we must accept the trial court's determination of witness credibility. (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 804-805; see also *Schmidt, supra*, 44 Cal.App.5th at p. 582 ["[I]n a bench trial, the trial court is the 'sole judge' of witness credibility"].)

Based on R&W's evidence described above, we conclude "a reasonable trier of fact could have found for [R&W] based on the whole record." (*Kuhn v. Deptartment of General Services* (1994) 22 Cal.App.4th 1627, 1633, italics omitted; see also *Schmidt, supra*, 44 Cal.App.5th at p. 582 ["Our job is only to see if substantial evidence exists to support the verdict in favor of the

16

prevailing party, not to determine whether substantial evidence might support the losing party's version of events"].)[6]

## III.   Evidentiary Rulings

The Osteroid Parties first contend the trial court erred by admitting the electronic receipt into evidence without expert testimony, primarily on the ground that the trial court ignored the law of the case. We are unpersuaded.

In *Red & White I*, when analyzing whether substantial evidence supported the trial court's conclusion that R&W breached the settlement agreement, the panel concluded the trial court was well within its discretion in declining to give weight to an electronic receipt purportedly containing Eric Oster's electronic signature. (*Red & White I, supra*, 38 Cal.5th at p. 587.) The panel noted: "As the [trial] court correctly stated, 'as to this supposed-receipt . . . signed electronically, you would have to bring in your experts . . . to talk about these machines and how they work. I don't know. Mr. Oster may have signed for something at some prior occasion, and the language next to that receipt subsequently gone back and been redacted and changed to say what the defendant now says it's claimed to have said at the

---

6      In support of their argument that Cheban's testimony is not substantial evidence, the Osteroid Parties also argue "gold is no longer legal tender in the Unites States[,]" citing 31 United States Code section 5103 ("[f]oreign gold or silver coins are not legal tender for debts."). They argue R&W presented no proof that Eric Oster agreed to accept payment in gold. But Cheban testified that Oster accepted the gold as payment when Oster came to his pawn shop on February 5, 2016. Viewing the evidence in light most favorable to the prevailing party, we conclude the trial court could reasonably find that Oster accepted payment in gold.

time the signature was rendered. So this [is] kind of almost like a backdating process, or whether this is, in fact, his signature at all. Plaintiff has said it's not.'" (*Ibid*.) The panel therefore held: "[T]he trial court had insufficient evidence to determine R&W paid the settlement in full, and was within its discretion to defer resolution of that issue to a postjudgment evidentiary hearing." (*Ibid*.)

We disagree with the Osteroid Parties that the above-quoted statement regarding expert testimony is the "law of the case." (See *Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127 ["'"The doctrine of 'law of the case' deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case"'" (original italics)].) That the trial court (Hon. Barbara A. Meiers) acted within its discretion by not considering the electronic receipt without expert testimony at that stage of the proceedings is not "'"a rule of law necessary to the decision of the case."'" (*Ibid*.) Rather, this court simply affirmed Judge Meiers' decision not to consider the evidence in determining whether to grant the Osteroid Parties' motion to enforce the stipulation for judgment, and to defer resolution of what payments had been made to a postjudgment evidentiary hearing. The law of the case doctrine does not apply.

The Osteroid Parties also argue the trial court erred by admitting the electronic receipt for the additional reasons that it was clearly fabricated (i.e., not authenticated), and Eric Oster's electronic signature on the receipt is invalid under Civil Code

18

section 1633.5.[7] But even if we were to find the court improperly admitted the electronic receipt, the Osteroid Parties have failed to establish prejudice. They completely ignore Cheban, Shut, and Maimon's testimony, all of which the trial court found credible. Thus, the Osteroid Parties have not met their burden to show they would have obtained a more favorable result if the electronic receipt, which merely corroborated witness testimony, was excluded. (*Bader v. Johnson & Johnson* (2022) 86 Cal.App.5th 1094, 1111 [evidentiary error reviewed for prejudice and reversible only "if there is a reasonable probability, or a reasonable chance, appellant would have obtained a more favorable result"].)

Next, the Osteroid Parties argue the trial court incorrectly excluded two categories of evidence: (1) emails between Tatiana Sedycheva, Eric Oster, and cross-defendant, Alex Meseonznik[8]; and (2) Eric Oster's purported business records. They argue these documents prove the $1.177 million in gold and $83,000 in cash was not paid. For example, in one email to Sedycheva dated November 7, 2017, Alex Meseonznik stated: "As for the Judgment from November 2014, the balance is still outstanding. [¶] The Red & White owner refuses to pay . . . ." The Osteroid Parties do not explain on what ground or grounds the Meseonznik documents were excluded (although the record reveals they were

---

7      Civil Code section 1633.5 is part of the Uniform Electronic Transactions Act. It provides, in part, that parties may agree to conduct a transaction by electronic means. (Civ. Code, § 1633.5.)

8      The Osteroid Parties do not explain Meseonznik's relationship to the other parties in the case, and only refer to him as a cross-defendant.

excluded on hearsay grounds).[9] Rather, they simply argue their purported relevance. They have, therefore, failed to meet their burden to affirmatively show error. (See *Truong, supra*, 181 Cal.App.4th at p. 119 ["[T]he burden is on [appellants] to show error affirmatively in the evidentiary rulings"].)

We are likewise unconvinced that Eric Oster's purported "business records," consisting of emails his widow found after his death regarding a business deal, qualify as business records under the Evidence Code. (See Evid. Code, § 1271, subd. (a) [a document is not made inadmissible by the hearsay rule when, in addition to other requirements, "[t]he writing was made in the regular course of a business"].) As the trial court correctly noted, "Just because something is in someone's file does not make it a business record." But in any event, even assuming error, the Osteroid Parties again fail to demonstrate prejudice in light of the contrary testimony and documentary evidence detailed above.[10]

---

9     Despite listing him on their witness list, the Osteroid Parties chose not to call Meseonznik to testify.

10     The Osteroid Parties also cursorily argue the trial court (Hon. Michelle Williams Court) erred by excluding a February 6, 2018 letter from R&W's counsel, Jonathan Levitan, to the Osteroid Parties' counsel, which stated in part: "According to my clients this debt no longer exists because some of it has been paid down by money and the balance taken care of through agreements with your client's late husband, Eric Oster." Again, they fail to demonstrate error, merely arguing Judge Meiers admitted the letter in 2018. Nor do they demonstrate prejudice from the purported error.

In sum, we conclude the Osteroid Parties have neither demonstrated that the trial court abused its discretion in making its evidentiary rulings, nor that any alleged error was prejudicial.

## IV.   Interest Calculation

After concluding R&W paid Oster $1,177,00 in gold and $83,000 in cash in February 2016, the trial court next turned to the issue of how to calculate the amount of the $3,056,153 April 14, 2020 judgment that remained due. As discussed above, the trial court adopted Benyamini's (R&W's expert) calculations. Benyamini started with $2.1 million as of November 13, 2014 (date of the stipulated judgment), added interest as it accrued at 10 percent, and applied the payments conceded and found to have been made as of the dates they were made, and applied those payments first to accrued interest and then any balance applied to the remaining principal. Applying this method resulted in a balance of $63,184 as of October 18, 2022.

The Osteroid Parties contend the trial court erred because it should have simply started with the April 2020 judgment ($3,056,153), added accrued interest at 10 percent until the October 2022 hearing ($764,038.25), and then subtracted both the conceded payments totaling $914,629, and the payments in gold and cash totaling $1,260,000. Applying this method would result in a balance of $1,645,562.25. The problem with this method, however, is that it asks the court to award interest on money R&W already paid. That is because simply deducting the sum of payments R&W made (including the 26 payments the Osteroid Parties conceded were made between 2014 and 2016), and subtracting that number from the $3,056,153 judgment, does not account for the interest that was included in the $3,056,153

21

judgment on the assumption that payments were *not* made prejudgment.

We decline to adopt the Osteroid Parties' position that the trial court should have awarded interest on money that was paid. Contrary to their contention, nothing in the stipulated judgment requires the court to do so. The stipulated judgment states that "payments [are to] be applied first to any outstanding interest before being applied to the principal amount of this stipulated judgment." It is undisputed that Benyamini did just that.

We likewise reject the Osteroid Parties' argument that the trial court "did not follow [this court's] ruling on calculating damages and interest." In *Red & White I*, *supra*, 38 Cal.App.5th at p. 590, the panel concluded: "The judgment is reversed in part and the matter is remanded to the trial court with directions to reduce the judgment to $2.1 million, less agreed upon payments of $45,000 and $56,000, plus interest from the date of the execution of the stipulated judgment. On remand, the trial court may also conduct one or more evidentiary hearings to determine the portion of the judgment that has been satisfied." After the case was remanded, and the trial court entered a new judgment, the parties stipulated additional payments were made between 2014 and 2016, and the trial court found $1,260,000 was paid in February 2016. The holding in *Red and White I* does not mandate the trial court apply interest from the date of the stipulated judgment *without* crediting R&W for the payments made on the dates, and in the amounts, paid.

Accordingly, we conclude the trial court properly applied the undisputed payments totaling $914,629, and the payments proven during the evidentiary hearing ($1,177,000 and $83,000), as of the date they were made—first against interest and then

against principal—which resulted in a $63,184 remaining balance as of October 18, 2022.

As noted above, R&W sought an amended judgment in the amount of $63,184, which the trial court (Hon. Colin P. Leis) denied. Consistent with the trial court's statement of decision, R&W should have, but did not, file a proposed order of partial satisfaction stating R&W owed $63,184 as of October 18, 2022. (See § 724.110, subd. (b) ["If the court determines that the judgment has been partially satisfied and that the judgment creditor has not complied with the demand, the court shall make an order determining the amount of the partial satisfaction . . . ].)

23

## DISPOSITION

The trial court's ruling in its statement of decision that "the total principal and interest due and owing as of October 18, 2022 was $63,184 and judgment debtors are entitled to an order of partial satisfaction of judgment[ ]" is affirmed. On remand, pursuant to section 724.110, subdivision (b), the trial court is directed to enter an order stating R&W has satisfied the April 14, 2020 judgment except for $63,184 as of October 18, 2022. R&W is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

MORI, J.

SIGGINS, J.*

---

\*      Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.